RECEIVED
IN LAKE CHARLES, LA

AUG - 8 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

JACKIE RAY BARCLAY, JR.     :     **DOCKET NO. 2:09 CV462**

VS.     :     **JUDGE MINALDI**

CAMERON CHARTER BOATS, INC.     :     **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court are three motions. The first is a Motion in Limine to Exclude the Testimony of Douglas Womack, filed by the defendant, Cameron Offshore Boats, Inc. [Doc. 34]. The second is the plaintiff's, Jackie R. Barclay, Jr.'s, Motion in Limine to Exclude Irrelevant Evidence. [Doc. 35]. The third is a Motion for Summary Judgment, filed by the defendant Cameron. [Doc. 39]. The parties have filed their respective Oppositions and Replies. [Docs. 44-48].

## BACKGROUND

This lawsuit arises out of an alleged incident occurring on January 9, 2009 aboard the M/V MARY DIANA, which is owned and operated by Cameron. Mr. Barclay claims to have fallen and injured his back and neck after tripping over an extension cord used to power the galley within the vessel. At the time of the accident, Cameron employed Mr. Barclay as the vessel's cook. [R. Doc. 1].

Cameron alleges that after the accident Mr. Barclay did not seek medical treatment; instead, he spent time gambling at a casino. Later, after visiting the casino, Mr. Barclay sought treatment from Dr. George Williams. Eventually, Dr. Williams recommended that Mr. Barclay

1

undergo a cervical fusion. While Cameron has provided maintenance and cure, it has refused to approve of the recommended cervical fusion. [R. Doc. 39].

Questioning whether the surgery was necessary, Cameron sought an opinion from Dr. Carl G. Goodman, an orthopedic surgeon in Shreveport, Louisiana. Dr. Goodman evaluated Mr. Barclay and ultimately "found no indication of nerve root or spinal cord compression to warrant any surgery." [R. Doc. 39-4]. Mr. Barclay contends that the denial of maintenance and cure for this surgery warrants an award of punitive damages. [R. Doc. 31-1]. Cameron seeks summary judgment on Mr. Barclay's punitive damages claim.

Meanwhile, Mr. Barclay seeks to introduce expert testimony at trial from Dr. Douglas Womack, an economist, who will provide an opinion that Mr. Barclay will only be able to earn the federal minimum wage of $7.25 an hour for the remainder of his working life. Cameron objects to this opinion testimony, arguing that Dr. Womack's minimum wage assumption is not based on a proper predicate, as it is speculative and a vocational rehabilitation expert is needed to make such a determination. According to Cameron, Mr. Barclay has not and will not introduce testimony or other evidence from a vocational expert from which Dr. Womack can render such an opinion. [R. Doc. 34].

In addition, Mr. Barclay seeks to prevent Cameron from introducing evidence of his gambling records after the accident and any records of his criminal convictions, arguing that this evidence is irrelevant and prejudicial. [R. Doc. 45].

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323).

If the movant satisfies this burden, however, then the nonmovant must "designate specific facts showing that there is a genuine issue for trial." *Tubacex,* 45 F.3d at 954.  The nonmovant may not rest upon the pleadings. *See Celotex*, 477 U.S. at 325. In evaluating motions for summary judgment, the court must consider all of the evidence in the record and view all facts in the light most favorable to the nonmoving party. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Delta & Pine,* 530 F.3d at 399.

## LAW & ANALYSIS: PUNITIVE DAMAGES

Until an injured seaman reaches the point of maximum medical cure, he is entitled to maintenance and cure benefits for injuries incurred in the course of his employment. *Vaughan v. Atkinson*, 369 U.S. 527 (1962). A seaman reaches maximum medical cure when it is probable that further treatment will result in no betterment of the seaman's condition. *Springborn v. American Commercial Barge Lines, Inc.*, 767 F.3d 89, 95 (5th Cir. 1985). "It is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure."

*Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985) (citing *Hubbard v. Faros Fisheries, Inc.*, 626 F.3d 196, 202 (1st Cir. 1980)). Ambiguities or doubts with respect to the entitlement to maintenance and cure are resolved in the seaman's favor. *Cooper v. Diamond M Co.*, 799 F.2d 176, 179 (5th Cir. 1976).

When an employer receives a claim for maintenance and cure, it is entitled to investigate and require corroboration of the claim before making payments. If the shipowner rejects the claim after investigation, the shipowner is liable for punitive damages only if the plaintiff proves that the denial exhibits a "willful and wanton disregard of the maintenance and cure obligation." *Atl. Sounding Co., Inc. v. Townsend*, 129 S.Ct. 2561, 2575 (2009). "[T]he willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith." *Harper v. Zapata Offshore Co.*, 741 F.2d 87, 90 (5th Cir. 1984).

"Where a shipowner has relied on the opinion of its own physician (who had examined the seaman) to terminate maintenance and cure payments in the face of conflicting medical opinions on the issue of whether maximum cure had been reached, a jury question was raised as to whether such behavior would entitle the seaman to punitive damages." *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987) (citing *Tullos*, 750 F.2d at 388). For example, in *Tullos* a shipowner was confronted with conflicting diagnoses and prognoses regarding whether an injured seaman had reached maximum medical cure. 750 F.2d at 388. Facing these conflicting opinions, the shipowner selected and paid an orthopedic surgeon to diagnose the injured seaman. The orthopedic surgeon found no evidence of injury and expressed the opinion that the seaman could return to work. As a result, the shipowner terminated its maintenance and cure payments. The seaman sought punitive damages for this termination, arguing that the termination was arbitrary and capricious. The court found that "[s]ufficient evidence was presented to raise a jury

4

question as to the arbitrariness and capriciousness of the denial of his benefits in view of the continuing conflicting diagnoses and prognoses." *Id.* at 389. The court reasoned that the shipowner's actions may not be arbitrary and capricious, but because it "chose one doctor from many and followed his recommendation," there was sufficient evidence to have the jury resolve the seaman's arbitrary and capricious claim. *Id.*

Here, like the shipowner in *Tullos*, Cameron sent Mr. Barclay to Dr. Goodman for an evaluation that conflicted with Dr. Williams' earlier finding that Mr. Barclay's alleged injuries warranted surgery. *Id.* Faced with conflicting medical reports, Cameron did not seek a third opinion. Rather, it hand-selected one doctor and followed his recommendation. As the court reasoned in *Tullos*, this is sufficient evidence to have the jury resolve the seaman's arbitrary and capricious claim. *Id.*

## MOTIONS IN LIMINE

Cameron seeks to exclude the entire testimony of Mr. Barclay's economist, Dr. Womack, arguing that his testimony is unreliable. Cameron contends either (1) that the testimony of a vocational expert is a necessary prerequisite to an economist's calculations on damages for future lost wages or (2) that the assumptions Dr. Womack uses in forming his opinion must be based on sufficient facts or evidence, not speculation.

Dr. Womack provides opinion testimony regarding the economic effect of the underlying injury to Mr. Barclay's future earnings capacity, based on various models and assumptions. In his expert report, he makes a "key," contested assumption in computing post-accident residual earnings capacity, i.e., Mr. Barclay will earn the federally mandated minimum wage of $7.25 an hour after the accident. Apparently, in making this assumption, Dr. Womack relied on the deposition testimony of Dr. Williams, who indicated that Mr. Barclay can return to "light duty"

5

work, and the deposition testimony of Mr. Barclay. It is unclear what Mr. Barclay's deposition

provides, factually. Only the deposition of Dr. Williams is in the record, and it was provided by

Cameron.

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based on
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme

Court tasked the federal district courts with a gatekeeper function to keep unreliable expert

testimony out of evidence. 509 U.S. at 589. The *Daubert* Court articulated a non-exclusive and

non-dispositive checklist for federal district courts to use when assessing the reliability of expert

testimony. *Id.* This gate-keeping function extends to all expert testimony. *Kumho Tire Co. v.

Carmichael*, 526 U.S. 137, 147 (1999). Trial judges have "considerable leeway in . . .

determining whether particular expert testimony is reliable." *Id.* at 155. "Both the determination

of reliability and the factors taken into account are left to the discretion of the district court

consistent with its gatekeeping function under FED. R. EVID. 702." *Munoz v. Orr*, 200 F.3d 291,

301-02 (5th Cir. 2000). The party offering expert testimony bears the burden of establishing its

reliability by a preponderance of the evidence. *Moore v. Ashland Chemical Inc.*, 151 F.3d 269,

276 (5th Cir. 1998).

In terms of reliability, district courts must "ensure that an expert's testimony rests upon a

reliable foundation." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1330-31 (5th Cir. 1996). The

Fifth Circuit has held that future wage loss awards based on a minimum wage figure is clearly

erroneous when it is not supported by any evidence in the record. *Masinter v. Tenneco Oil Co.*, 867 F.2d 892, 899 (5th Cir. 1989) ("After careful review of the record, we are unable to locate any support for calculating future lost wages based on Masinter's ability to only earn minimum wage."). An expert's opinion must likewise be excluded if it is not supported by facts or evidence, as the expert opinion is being offered as proof of the defendant's liability. Indeed, an expert's ultimate opinion on future lost earnings must be grounded in sufficient factual support, not "unsupported conjectures"; otherwise, it is unreliable and inadmissible under Rule 702. *See Hathaway v. Bazany*, 507 F.3d 312, 318-319 (5th Cir. 2007) (finding that trial court properly excluded proffered expert testimony because it relied on insufficient factual support); *see also Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) ("A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*. [T]o be admissible, . . . [an] expert's ultimate opinion must be grounded in the scientific process and may not be merely . . . unsupported conjecture."); *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir.) (excluding expert testimony that was based on assumption that part-time longshoreman would achieve full-time status) *cert. denied*, 488 U.S. 981 (1988); *In re Air Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1234 (5th Cir. 1986) (excluding expert testimony based on unsupported assumption that decedent's wage would have grown 8% annually).

Here, Dr. Womack expert opinion on future earnings capacity (i.e., Mr. Barclay can only earn a minimum wage salary in the future) is predicated on two assumptions: first, that Mr. Barclay will be able to return to work, which could be supported by Dr. Williams' testimony, and second, that Mr. Barclay will earn no more than the federally mandated minimum wage,

which is supported by nothing. Mr. Barclay contends that this latter assumption derives from his age and employment history. Essentially, he argues that he will be unable to make anything above the federally mandated minimum wage in a "light duty" job because he has never worked a "light duty" job. This argument is not supported by any facts or evidence and thus amounts to pure speculation. While this assumption may represent a possibility, possibility alone cannot serve as the basis for an expert's opinion. *See Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1137 (5th Cir. 1985). Because there is no evidence to support Dr. Womack's minimum wage opinion, any expert testimony that includes these unsupported calculations of future earnings is inadmissible.[1] This is not to say that it could not be supported by lay evidence had Mr. Barclay offered any; it merely reflects Mr. Barclay's inability to meet his burden of establishing the reliability of Dr. Womack's testimony.

Next, Mr. Barclay contends that his prior criminal records and post-accident gambling records are inadmissible as irrelevant and prejudicial. Cameron concedes that, at this point, it only has evidence of crimes that fall outside the 10-year period prescribed by Rule 609 and admits that those records are not relevant for impeachment.

However, Cameron argues that the gambling records are relevant because they tend to show, substantively, that Mr. Barclay did not suffer a loss of enjoyment of life after the injury. This Court agrees. This evidence is especially relevant to show that Mr. Barclay has not lost

---

[1] Although Cameron also argues that evidentiary support from a vocational rehabilitation expert is necessary to calculate future employment figures, the case it cites in support, *Jones v. Trailor*, 636 So.2d 1112, 1122 (La. App. 4 Cir. 1994), is not relevant. In that case, the issue was substantive, not procedural, and dealt with whether a court could award damages for loss of future earnings capacity without the testimony of a vocational and economic expert. In a later case, the Fifth Circuit considered the issue, noting that "[t]he Louisiana Supreme Court has permitted awards for loss of future earning capacity both with and without the testimony of vocational and economic experts." *Barocco v. Ennis, Inc.*, 100 Fed. Appx. 965, 968 (5th Cir. 2004). Thus, the testimony of a vocational expert is not required to prove a loss of future earnings capacity.

8

significant enjoyment of his life after the accident. *See e.g., Smith v. Harrah's New Orleans Mgmt. Co.*, 213 Fed. Appx. 353, 361 (5th Cir. 2007). And it may show that that Mr. Barclay enjoys life more after the accident than before the accident, since he could spend time at a casino that would otherwise be spent cooking on vessel. Accordingly, it is

ORDERED that Cameron's Motion for Summary Judgment [Doc. 39] is DENIED;

IT IS FURTHER ORDERED that Cameron's Motion in Limine [Doc. 35] is GRANTED;

IT IS FURTHER ORDERED that Mr. Barclay's Motion in Limine [Doc. 34] is GRANTED in part and DENIED in part.

Lake Charles, Louisiana, this _____ day of _____ 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

9